## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **VENUGOPAL REDDIAR, M.D.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **ROBERT WILKIE, Secretary of the** | ) | |
| **Department of Veteran's Affairs.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, Venugopal Reddiar, M.D., by and through his legal counsel The Law Offices of Edward A. Stump, LLC., and for his Complaint against the Defendant states the following.

### PARTIES/JURISDICTION/VENUE

1. Plaintiff is a Citizen of the United States, residing within the territorial jurisdiction of the United States District Court for the Western District of Missouri.

2. Plaintiff was an employee of the United States Department of Veteran Affairs until July 1, 2019.

3. Plaintiff was at all times relevant to this complaint was, employed at the Veteran's Administration Medical Center at Kansas City, Missouri within Jackson County, Missouri, and within the territorial jurisdiction of the United States District Court for the Western District of Missouri. Plaintiff was employed as a Primary Care Physician.

4. Defendant Robert Wilkie is the Secretary of the Department of Veteran's Affairs, acting in his official capacity, who is the proper Defendant in this suit pursuant to 42 U.S.C. §2000e-16(c).

5. The Department of Veteran's Affairs employs more than 501 employees.

6. The Plaintiff alleges retaliation, reprisal for prior EEO activity and discrimination based upon national origin and discrimination based upon race and color that also lead to retaliation and reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq., as made applicable to Federal Employees, such as the Plaintiff, by 29 C.F.R. 1614.101(a) (discrimination) and 29 C.F.R. 1614.101(b) (retaliation) and 5 C.F.R. 353.202 (reprisal).

7. Pursuant to 29 C.F.R. 1614.105, Plaintiff notified his applicable EEO Counselor of the complaints of discrimination and retaliation and reprisal alleged herein within 45 days of their occurrence.

8. Pursuant to 29 C.F.R. 1614.105 and 29 C.F.R. 1614.106 the Plaintiff filed Individual Complaints of Discrimination, retaliation and reprisal with the United States Department of Veteran's Affairs within 15 days after he received the notice required by 29 C.F.R. 1614.105. The Plaintiff's EEO complaints were filed on, March of 2016, March of 2017, October of 2017, June of 2018 and May of 2019. This complaint is only addressing the complaints made on March of 2016, March of 2017, October of 2017.

9. The United States Department of Veteran's Affairs acknowledged receipt of the Plaintiff's Complaints by giving his March 10th, 2016 Case# 200J-0589-2016101802, March 16th, 2017 Case# 200J-0589-2017101919 and his October 25th, 2017 Case# 200J-0589-2017105295. (See Exhibit #1)

10. A final EEOC decision was given on February 25th, 2020 providing Plaintiff with the ability to file his claims in Federal Court should he so desire within 90 days of the final decision.(See Exhibit #2)

11. The Plaintiff has exhausted his administrative remedies and is entitled to file suit in Federal Court.

12. Jurisdiction and venue are proper in this Court.

## **AGENCY/RESPONDEAT SUPERIOR**

13. At all relevant times, the Department of Veteran's Affairs, by and through the VA Medical Center of Kansas City, was acting by and through their actual and/or ostensible employees and agents in operating their Medical Facility. Defendant, in his official capacity, is the representative of the Department of Veteran's Affairs per statute.

14. Whenever reference in this Petition is made to any act or transaction by Defendant, such allegation(s) shall be deemed to mean that the principals, officers, directors, chiefs, employees, agents and/or representatives of the Department of Veteran's Affairs knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of the Department of Veteran's Affairs and Defendant while actively engaged in the scope of their duties.

15. At all relevant times, all employees and agents of the Department of Veteran's Affairs including but not limited to Ahmad Batrash, M.D., Terri Skalitzky, M.D., Kathleen Fogarty, Laura Reckrodt (Nurse Co-Lead), Daniel Cline, M.D. Donald Barnett. M.D., and Nurse Pam Ferguson were acting within the course and scope of their employment and/or agency as employees or agents of the Department of Veteran's Affairs and Defendant and in pursuit of furthering the interests of the Department of Veteran's Affairs and Defendant.

16. At all relevant times, the Department of Veteran's Affairs and Defendant were acting by and through their actual and/or ostensible employees and agents, including but not limited

to <u>Ahmad Batrash, M.D., Terri Skalitzky, M.D., Kathleen Fogarty, Laura Reckrodt (Nurse Co-Lead), Daniel Cline, M.D., Donald Barnett. M.D., and Nurse Pam Ferguson</u> in operating Defendant's VA Medical Center located in Kansas City, Missouri.

17. Whenever reference in this Petition is made to any act or transaction by the Department of Veteran's Affairs and Defendant any such allegations shall be deemed to mean that the principals, officers, administrators, sergeants, directors, chiefs, employees, agents and/or representatives of such Department of Veteran's Affairs and Defendant committed, knew of, performed, authorized, ratified and/or directed such act(s) or transaction(s) on behalf of the Department of Veteran's Affairs and Defendant while actively engaged in the scope of their duties.

18. The Department of Veteran's Affairs and Defendant are vicariously liable for the acts and omissions of its Departments, Managers, Supervisors, directors, chiefs, administrators, agents and employees in regards to the allegations stated below and as to all of the Counts listed below

## GENERAL ALLEGATIONS (Start Typing filling in the timeline and history Here)

19. Between March of 2015 and July 1, 2019 Plaintiff was an employee of Department of Veteran's Affairs and was subjected to the following acts of discrimination and retaliation while employed by the United States Department of Veteran's Affairs.

20. In June of 2015, the Clinic which Plaintiff was affiliated with was inadequately staffed per the regulations, policies and procedures adopted by the Department of Veteran's affairs.

21. In June of 2015, while the Plaintiff's clinic was short staffed,  Nurse Ferguson made the following comments to the Plaintiff:

a.      Is your son dark like you?

b.    Why is the other Indian doctor lighter than you?

c.    *In October of 2015,* when the Plaintiff directed Nurse Ferguson to administer a pneumonia shot and a flu shot to the same patient on the same day, in different arms, Nurse Ferguson objected and stated "This is not India." Ms. Ferguson did not follow the Plaintiff's order. She did not administer both shots on that day

22. Plaintiff complained of the conduct set forth in Paragraph *21* by making repeated informal EEO complaints per the policies and procedures of the Kansas City Veterans Administration Medical Center regarding the conduct of Nurse Ferguson between June of 2015 and October of 2015 to his immediate supervisor and Primary Care Service Chief, Terri Skalitzky, M.D. No Action was taken in response to his repeated complaints.

23. On October 27, 2015, Plaintiff made a further complaint of Discrimination and hostile work environment to Dr. Ahmad Batrash, the chief of staff of the Kansas City Veterans Administration Medical Center. No Action was taken in response to these complaints.

24. On October 29, 2015, Nurse Ferguson was transferred to another clinic within the Kansas City Veteran's Administration, thereby making the Plaintiff's team more short-staffed.

25. In October of 2015, after the Plaintiff complained of Nurse Ferguson's conduct to Dr. Skalitzky and Dr. Batrash, Dr Skalitzky reduced the staffing of the clinic which the Plaintiff was associated with from 1 Provider & 3 supporting staff to one Provider and no supporting staff, which made the plaintiff work as a one Provider "team." From that point going forward, the Plaintiff operated his Primary Care clinic by himself without a regular nurse or any regular support staff to assist with record keeping, administration or scheduling. Most of the other clinics within the Kansas City Veteran's Administration were consistently staffed with at least 3 support personnel per 1 Provider.

26. After Dr. Skalitzky made the Plaintiff into a one Provider "team" she then proceeded to assign 450 additional patients to him in November of 2015, rendering his workload unmanageable.

27. As a result of his untenable workload, the Plaintiff sought another job and obtained a job offer at a hospital in India with the intent of working for a short period pending getting another full time job in the US. Once he obtained the said job offer the Plaintiff, on November 23, 2015 gave the Kansas City Veteran's Administration a five week notice of his intention to leave the VA in order to work in India.

28. As a part of his intended departure, the Plaintiff requested that the Kansas City Veteran's Administration provide the Plaintiff's Proficiency Report (report regarding his job performance and competence) so that he can forward it to the Plaintiff's prospective employer in India.

29. In response to the Plaintiff's request that the Kansas City Veteran's Administration supply the Plaintiff's Proficiency Report, Dr. Skalitzky prepared proficiency report on November 27, 2015 with false negative and derogatory comments regarding the Plaintiff's conduct and performance.

30. The Plaintiff requested that Dr. Batrash amend the false negative proficiency report. Dr. Batrash then amended the Plaintiff's Performance rating to satisfactory, but included his own negative comments.

31. As a result of the provision of Dr. Skalitzky's and Dr. Batrash's negative comments in the proficiency report to the Plaintiff, caused him to not be able to send his proficiency report to his prospective employer in India. His job offer was then and therefore revoked.

32. The negative comments and performance reviews prepared and published by Dr. Skalitzky and Dr. Batrash were false because the Plaintiff had consistently received favorable reviews and performance pay before he complained of discriminatory conduct and hostile work environment.

33. After the prospective employer revoked the job offer Plaintiff continued to Work in the Kansas City Veteran's Administration Medical Center.

34. Dr. Skalitzky (beginning in January of 2016) then began to aggressively monitor Plaintiff's practice at the one Provider clinic which she had compelled him to practice within and actively solicited false negative feedback from the Plaintiff's patients and co-workers in order to adversely affect Plaintiff's performance ratings, performance reviews, performance pay and ultimately his employment.

35. On December 28, 2015 Dr. Skalitzky assigned two float nurses to work with Plaintiff. Those nurses were assigned to assess the Plaintiff, which was contrary to the rules, regulations, procedures and practice of the Veteran's administration. The nurses objected to the improper instruction given by Dr. Skalitzky. However they gave the Plaintiff positive assessments.

36. From December 29, 2015 to January 13, 2016 Dr. Skalitzky and Dr. Batrash initiated a "FPPE" (Focused Professional Practice Evaluation) performance plan with respect to Plaintiff, the stated purpose of which was to address the Plaintiff's alleged problems with interpersonal communication.

37. The FPPE plan was later closed when the allegations which purportedly supported it were found to be unsubstantiated.

38. On January 21, 2016, the Plaintiff filed an informal EEO Complaint alleging retaliation in violation of the applicable EEO statutes, regulations, rules and procedures. That complaint was assigned to Dr. Fogarty for handling.

39. On January 29th, 2016 Plaintiff's Patient Aligned Care Team was dismantled, which was not done to any other doctors at the time.

40. On February 25th or 26th, 2016 an informal mediation of the Plaintiff' EEO claim was held, with no resolution or relief being provided by the Defendant.

41. On March 10th, 2016 the Plaintiff filed a formal EEO complaint alleging discrimination and retaliation.

42. On March 31st, 2016 Dr. Skalitzky solicited and made an unfounded, reckless and false allegation of medical negligence against the Plaintiff.

43. In April of 2016 Plaintiff was placed on another FPPE plan for alleged problems with inter-personal communication which was then kept in place for three years in violation of the rules, policies and procedures of the Kansas City Veteran's Administration Hospital. This FPPE plan was likewise unsubstantiated but remained in place while the Plaintiff complied with its terms.

44. In April of 2016 Dr. Skalitzky required that Plaintiff participate in three mandatory coaching sessions conducted by Dr. Skalitzky. It was canceled after one session with false allegation of non-participation.

45. In the course of administering the second FPPE plan relating to the Plaintiff's alleged poor performance, Dr. Skalitzky created a negative report regarding the Plaintiff' conduct which was submitted to Dr. Batrash, Chief of Staff, with recommendation for admonishment. The Plaintiff then responded to that report with facts that would refute the allegation of

misconduct. But the Plaintiff was issued an admonishment memo by Dr. Batrash in September of 2016 after ignoring the facts stated in the rebuttal response.

46. On June 16, 2016 Plaintiff was subjected to a peer review conducted by a multi-disciplinary Peer Review Committee that was chaired by Dr. Barnett, with false allegation of negligence. On June 23, 2016 Plaintiff endured another FPPE evaluation without any specifics, and Plaintiff was issued a proposed admonishment and given an unsatisfactory mid-year performance evaluation.

47. Between January 21st, 2016 through October 25th, 2016 Plaintiff continually complained to Dr. Kathleen Fogarty who took no actions (investigations. Discipline, etc.) on his complaints of (hostile work environment, harassment in the workplace, retaliation for prior EEO activity directed toward plaintiff).

48. During the three year period that the second FPPE plan was in place, between April of 2016 and June of 2019, where Dr. Skalitzky continued to solicit and obtain or make false and unsubstantiated complaints of the Plaintiff's alleged misconduct (over 60 such complaints in total). None of the said complaints about the Plaintiff were substantiated.

49. During the remainder of 2016 and all of 2017 Plaintiff continued to receive unsubstantiated negative comments and poor ratings in proficiency evaluations.

50. During the Remainder of 2016 and 2017 Plaintiff continued to receive complaints and baseless allegations including allegations by Dr. Cline who in May of 2017 verbally threatened Plaintiff with disciplinary action and did removal of patients from his workload who had allegedly made complaints which were found to be baseless.

51. November of 2017 Plaintiff was issued a written counseling letter by Dr. Skalitzky

52. On December 12th, 2017 Laura Reckrodt, the Nurse Co-Lead and Acting Primary Care Service Chief, threatened she would take disciplinary action against Plaintiff.

53. Dr. Skalitsky's continued badgering of the Plaintiff's patients in soliciting complaints, her sabotage of his practice and her continued pursuit of the second FPPE plan continued through the termination of the Plaintiff's employment on July 1, 2019.

54. The Plaintiff filed additional complaints of EEO retaliation for in March of 2017, October of 2017, June of 2018 and May of 2019, all alleging the continued retaliation and reprisal for prior EEO activity which he was facing.

55. As a direct and consequent result of the Defendant's conduct in discriminating and retaliating against Plaintiff and committing acts of reprisal, the Defendant's employment was terminated and he sustained a loss of income of $185,000 per year.

56. As a direct and consequent result of the Defendant's conduct in discriminating and retaliating against Plaintiff and committing acts of reprisal, the Plaintiff also suffered and continues to suffer mental anguish and other non-economic damages, which are permanent.

57. As a direct and consequent result of the Defendant's actions, the Plaintiff was not considered for promotions, performance pay, and pay raises for Board Re-certification while he was still employed by the Defendant.

58. The United States Department of Veteran's Affairs discrimination, harassment, reprisal and retaliation as described herein, was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq.

59. As a direct and consequent result of the Department of Veterans Affairs' discrimination, harassment, reprisal and retaliation as set forth herein, the Plaintiff has suffered emotional distress, embarrassment and humiliation necessitating the award of Compensatory

Damages. Further the actions of the Department of Veteran's Affairs and Defendant and its agents and employees were intentional, wanton, willful, fraudulent, malicious and outrageous, such that an award of punitive damages is appropriate to punish and deter Department of Veteran's Affairs and Defendant's Conduct.

60. As a direct and consequent result of the Department of Veteran's Affairs and Defendant's discrimination, harassment and retaliation as set forth herein, the Plaintiff is entitled to his reasonable attorney's fees and costs.

**COUNT I DISCRIMINATION BASED ON RACE/ NATIONAL ORIGIN/COLOR**

61. Plaintiff incorporates the allegations set forth in Paragraphs 1through 60 of this Complaint as if fully set forth herein

62. At all times alleged in this complaint, Plaintiff was subjected to the following comments. Nurse Ferguson made the following comments to the Plaintiff:

    a.      Is your son dark like you?

    b.      Why is the other Indian doctor lighter than you?

    c.      In October of 2015, when the Plaintiff directed Nurse Ferguson to administer a pneumonia shot and a flu shot to the same patient on the same day, in different arms, Nurse Ferguson objected and stated "This is not India."

This conduct was unwelcome.

63. The conduct alleged in this Petition was based upon Plaintiff's Race, Ethnicity, where these acts of discrimination and harassment did not happen to employees who were of other ethnic/racial backgrounds.

64. As a direct and consequential result of the conduct alleged herein, the Plaintiff sustained past, present, and future loss of income, pain and suffering, angst, humiliation and loss of enjoyment of life along with such other damages as are supported by the evidence.

65. The actions of the Department of Veteran's Affairs and Defendants and their agents and employees were intentional, wanton, willful, fraudulent, malicious and outrageous, such that an award of punitive damages is appropriate to punish and deter such conduct

WHEREFORE, Plaintiff prays for Judgment in a sum greater than $75,000 together with sum for punitive damages in a sum sufficient to punish and deter the Department of Veteran's Affairs and Defendant from like action in the future and for such other relief as the Court deems just and proper.

## COUNT II RETALIATION

66. Plaintiff incorporates the allegations set forth in Paragraphs 1through 65 of this Complaint as if fully set forth herein

67 At all times alleged in this complaint, Plaintiff was subjected to the retaliatory conduct described in paragraphs 19 through 54, supra.

68. The retaliatory conduct described above was unwelcome and was complained about by Plaintiff to the correct oversight channels, persons and departments.

69. Upon the making of complaints within the VA and to the EEO Plaintiff was harassed, threatened, terminated, charged with untrue acts and violations of which were put into his permanent personnel file and otherwise retaliated against by the Department of Veteran's

Affairs and Defendant and its agents, employees, managers and supervisors and the Kansas City VA Medical Center.

70. As a direct and consequential result of the retaliatory conduct alleged herein, the Plaintiff sustained past, present, and future loss of income, pain and suffering, angst, humiliation and loss of enjoyment of life along with such other damages as are supported by the evidence.

71. The actions of the Department of Veteran's Affairs and Defendants and their agents and employees were intentional, wanton, willful, fraudulent, malicious and outrageous, such that an award of punitive damages is appropriate to punish and deter such conduct

WHEREFORE, Plaintiff prays for Judgment in a sum greater than $75,000 together with sum for punitive damages in a sum sufficient to punish and deter the Department of Veteran's Affairs and Defendants from like action in the future and for such other relief as the Court deems just and proper.

## COUNT III REPRISAL

72. Plaintiff incorporates the allegations set forth in Paragraphs 1through 71 of this Complaint as if fully set forth herein

73. At all times alleged in this complaint, Plaintiff was subjected to conduct that constituted Reprisal as described in paragraphs 19 through 54, supra.

74. The Reprisal described above was unwelcome and was complained about by Plaintiff to the correct oversight channels, persons and departments.

75. Upon making the complaints within the VA and to the EEO Plaintiff was harassed, threatened, terminated, charged with untrue acts and violations of which were put into his permanent personnel file and otherwise retaliated against by the Department of Veteran's Affairs and Defendant and its agents, employees, managers and supervisors and the Kansas City VA Medical Center, for having asserted his rights by making complaints and reporting improper conduct and behavior that he saw and that was done against him.

76. As a direct and consequential result of the conduct alleged herein, the Plaintiff sustained past, present, and future loss of income, pain and suffering, angst, humiliation and loss of enjoyment of life along with such other damages as are supported by the evidence.

77. The actions of the Department of Veteran's Affairs and Defendants and their agents and employees were intentional, wanton, willful, fraudulent, malicious and outrageous, such that an award of punitive damages is appropriate to punish and deter such conduct

WHEREFORE, Plaintiff prays for Judgment in a sum greater than $75,000 together with sum for punitive damages in a sum sufficient to punish and deter the Department of Veteran's Affairs and Defendants from like action in the future and for such other relief as the Court deems just and proper.


### DEMAND FOR A JURY TRIAL OF ALL ISSUES

78.    Plaintiff demands a jury trial on all issues in this matter.

Respectfully Submitted,

The Law Offices of Edward A. Stump, LLC.

By:/s/ *Edward A. Stump*

Edward A. Stump # 57120
The Law Offices of Edward A. Stump, LLC
P.O. Box 412602
Kansas City, MO 64141
Phone: (816) 214-5810
Fax: (816) 561-935
Email: law.offices.edstump@gmail.com

ATTORNEY FOR PLAINTIFF