IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VENUGOPAL REDDIAR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-CV-00410-SRB |
| DENIS R. McDONOUGH, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant's Motion for Judgment as A Matter of Law And Alternatively, Motion For New Trial. (Doc. #136.) For the reasons stated below, the motion is DENIED.

### I. BACKGROUND

In 2014, Dr. Terri Skalitzky ("Dr. Skalitzky") became the Service Chief of Primary Care at the Kansas City Veterans Affairs Medical Center ("KCVA"). Dr. Skalitzky was previously the physician assigned to Patient Align Care Team ("PACT 9"). On February 26, 2015, Dr. Skalitzky hired Dr. Venugopal Reddiar ("Plaintiff") to replace the open position in PACT 9, and Plaintiff began his employment as a primary care physician in March 2015. Initially, PACT 9 consisted of Plaintiff and Dr. Skalitzky's prior staff: registered nurse, Leah Credle ("Credle"), and licensed practicing nurse ("LPN"), Pam Schutjer ("Schutjer").

At KCVA, every physician provider, including Plaintiff, was involved in an Ongoing Performance Practice Evaluation ("OPPE"). Under this policy, each provider is evaluated every six months regarding certain core competencies. KCVA may initiate a Focused Professional Practice Evaluation ("FPPE") which can be used to review specific issues with a provider's quality of care. An FPPE occurs when a provider is initially given privileges, whenever there are

additions or modifications to privileges, or to monitor the remedial action of a provider if remediation is proposed. The latter scenario is considered an FPPE "for cause."

An FPPE "for cause" is typically initiated due to a trigger identified in the OPPE cycle based on concerns of a provider's quality of care. When these concerns arise, that concern and an FPPE for cause recommendation is brought to the attention of the Professional Standards Board ("PSB"). The PSB makes the final determination of whether to initiate an FPPE for cause. An FPPE for cause establishes certain criteria for the provider to meet, and the implementation and oversight of an FPPE is under the direction of the relevant Service Chief. Dr. Skalitzky was Plaintiff's Service Chief.

On June 17, 2015, Dr. Skalitzky allegedly found Credle crying in the hallway. Dr. Skalitzky testified that Credle was upset because Plaintiff talked down to her. Credle also emailed Pam Bean ("Bean"), the Chief Nurse, about the conflict with Plaintiff. While the parties dispute the legitimacy and extent of the investigation into this incident, Dr. Skalitzky and Bean determined that the conflict between Plaintiff and Credle was possibly a result of a personality conflict and decided to monitor Plaintiff's interactions with the rest of PACT 9.

While Schutjer reported to Plaintiff, Schutjer made several comments to Plaintiff regarding his color, race, and nationality. Plaintiff complained several times to Dr. Skalitzky about Schutjer's comments and the impact Schutjer had on his work environment and performance. Schutjer was removed from PACT 9 in November 2015.

On October 16, 2015, the PSB determined that Plaintiff's incident with Credle was a significant behavior incident. As a result, the PSB initiated a six-month FPPE for cause related to an interpersonal communications trigger (the "Initial FPPE"). During that process, Plaintiff's PACT 9 team, no longer consisting of Credle and Schutjer, was asked to provide feedback

2

reflecting Plaintiff's interpersonal communications. The PACT 9 rated Plaintiff positively and, in turn, the Initial FPPE was closed on January 13, 2016.

In April 2016 another FPPE for cause was initiated for Plaintiff (the "Second FPPE") for interpersonal communication skills. Plaintiff's progress on interpersonal communication skills towards patients and staff were reviewed during the bi-annual OPPE process. One of the interpersonal communication skills triggers was the number of patient complaints lodged against Plaintiff. The KCVA employs patient advocates who field and address patient complaints and provider transfer requests. The PSB and KCVA found that Plaintiff continually had more patient complaints and transfer requests than any other provider during his employment. Throughout the Second FPPE, Plaintiff continually accused Dr. Skalitzky of soliciting or fabricating patient and staff complaints to ensure Plaintiff could not meet the criteria to close the Second FPPE successfully. Plaintiff also complained throughout the Second FPPE process that he was not permitted to reach out to the specific patients who had made the complaints. The Second FPPE lasted until it was closed as "unsuccessful" on May 10, 2019. Plaintiff filed at least five Equal Employer Opportunity ("EEO") complaints against Dr. Skalitzky in March 2016, March 2017, October 2017, June 2018, and May 2019. The Second FPPE was extended throughout the OPPE cycles in 2016, 2017, and 2018, citing the same interpersonal communication triggers.

During the second FPPE, Dr. Skalitzky denied Plaintiff performance pay awards due to the perception that he was not making any progress in resolving the Second FPPE. However, on June 14, 2017, Plaintiff's LPN, Michaela Futscher ("Futscher"), nominated Plaintiff for the Employee of the Month Award. On August 21, 2017, Plaintiff's RN, Paula Moore ("Moore"), nominated Plaintiff for Employee of the Month. Futscher and Moore both cited Plaintiff's positive internal and external customer services in support of their nominations. Five patients nominated Plaintiff for the Excellent Customer Service Award in 2017 and 2018. Still, the

3

Second FPPE was not closed because of the number of negative patient and staff complaints against Plaintiff.

From August 28, 2018, to May 3, 2019, Plaintiff was detailed to a position that was non-patient facing so the KCVA could do a fact-finding investigation into Plaintiff's alleged misconduct and failure to provide appropriate care to patients. Starting on February 22, 2019, Plaintiff was sent to a three-day communication skills program at Brown University in Rhode Island. On February 23, 2019, one of the program directors, intending to email the other program director, inadvertently emailed Plaintiff, with a subject line "He is in litigation" and to "Be careful with this guy." (Doc. #65-15, p. 1.) The third day of the training was subsequently cancelled.

On April 24, 2019, Plaintiff was reassigned to his prior, patient-facing role. On May 3, 2019, two more patient complaints were made against Plaintiff. When asked to respond to these complaints, Plaintiff again accused Dr. Skalitzky of creating a paper trail against Plaintiff, without providing any specifics about the complaints. Dr. Skalitzky then attempted to deliver a memo regarding patient encounters, but Plaintiff refused to accept the memo or discuss its substance without Futscher as a witness. Plaintiff continued to refuse to allow others to observe his patient interactions without Futscher or Moore present, as they were the only two staff Plaintiff trusted.

On May 10, 2019, the PSB unanimously voted to close the FPPE unsuccessfully and suspended Plaintiff's physician privileges. On May 14, 2019, Plaintiff was removed from his duties as a Primary Care physician. On July 1, 2019, Defendant terminated Plaintiff's employment and revoked his privileges based on charges of failure to meet the FPPE requirements, inappropriate conduct toward patients, failure to follow supervisory instructions, and inappropriate conduct. Plaintiff appealed his termination to the Disciplinary Appeals Board,

which subsequently sustained all charges as well as Plaintiff's termination and the revocation of privileges.

Plaintiff subsequently filed suit against Defendant, alleging various violations of Title VII. Plaintiff's Amended Complaint asserts four claims against Defendant: (1) discrimination based on race, color, and national origin through disparate treatment (Count I), (2) discrimination based on race, color, and national origin through harassment/hostile work environment (Count II), (3) retaliation (Count III), and (4) reprisal (Count IV).

On November 10, 2022, Plaintiff was successful before a jury trial on his retaliation claim.[1] On December 8, 2022, Defendant brought the instant motion for judgment as a matter of law and for a new trial. Plaintiff opposes the motion. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) provides that a party allows a party that has previously moved for judgment as a matter of law to renew that motion no later than 28 days after the entry of judgment. "In the matter of a renewed [motion for judgment as a matter of law,] a court must affirm the jury's verdict unless, in viewing the evidence in the light most favorable to the prevailing party, the court concludes that a reasonable jury could not have found for that party." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (citation omitted). When determining a Rule 50 motion for judgment as a matter of law, "the [C]ourt should review all of the evidence in the record," and "draw all reasonable inferences in favor of the nonmoving party," without making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Judgment as a

---

[1] Based on pretrial rulings, the only remaining claim was for retaliation.

5

Case 4:20-cv-00410-SRB   Document 142   Filed 01/05/23   Page 5 of 13

matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable jury could have found for the nonmoving party." *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001) (internal quotation and citation omitted).

Rule 50 also allows a party to move, in the alternative or jointly, for a new trial under Rule 59. Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Id*. When ruling on a Rule 59 motion for a new trial, the Court has broad discretion. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). However, a Rule 59 motion serves the "limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Id.* at 1286 (internal quotation and citations omitted).

### III. DISCUSSION

#### A. Rule 50(b) Judgment as a Matter of Law

##### 1. Evidence of Pretextual Termination

Defendant argues that a reasonable jury could not have found for Plaintiff because there is no evidence of pretext. Plaintiff counters that the jury reasonably concluded that Defendant's explanation for its behavior was pre-textual. Plaintiff also argues that there is sufficient direct evidence of discrimination to show retaliation.[2]

---

[2] "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Young-Losee v. Graphic Packaging Int'l, Inc*., 631 F.3d 909, 912 (8th Cir. 2011). Plaintiff's evidence illustrated at trial and presented in his brief falls short of this standard. As a result, *McDonnell Douglas* burden-shifting analysis is required.

6

"Where there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework is applied." *Ramlet v. E.F. Johnson Co.*, 464 F. Supp. 2d 854, 860–61 (D. Minn. 2006), aff'd, 507 F.3d 1149 (8th Cir. 2007). To establish a prima facie case of retaliation, Plaintiff "must show that (1) [he] engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011) (internal citation omitted). "The burden to show a prima facie case is not difficult[.]" *Musolf v. J.C. Penny Co.*, 773 F.3d 916, 919 (8th Cir. 2014).

Based on the evidence at trial, the Defendant's argument is unpersuasive. In analyzing whether a prima facie case was established, neither brief disputes that Plaintiff engaged in protected activity, nor the occurrence of adverse actions against the Plaintiff. The element in dispute, causation, has been demonstrated by Plaintiff. There was sufficient evidence for a reasonable jury to conclude that but-for his complaints about Schutjer and EEO complaints against Dr. Skalitzky, Plaintiff would not have been terminated. Plaintiff was retaliated against after he complained to Dr. Skalitzky about Schutjer's comments. The adverse actions continued against Plaintiff as he continued to file EEO complaints against the KCVA. Additionally, despite claiming Plaintiff had issues interacting with staff and patients, multiple staff and patients nominated him for awards stemming from the positive work product he produced while on his second FPPE. Considering these facts, evidence supports that Plaintiff met the causation element to make a prima facie case of retaliation against Defendant.

2. **Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination**

Because Plaintiff carried his initial burden, the second step under *McDonnell Douglas* shifts the burden to Defendant to articulate a legitimate, non-discriminatory reason for the

7

termination. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. Missouri Dep't of Social Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).

At trial and through its briefing, Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, mainly that Plaintiff had continual interpersonal communication issues with his staff and patients which disrupted KCVA's ability to provide adequate healthcare to its patients. The evidence supports that Defendant has carried its burden under the second step of the *McDonnell Douglas* framework.

### 3. Plaintiff has Presented Evidence that Defendant's Reasons Were Pretextual

To avoid judgment as a matter of law, the final step under *McDonnell Douglas* requires Plaintiff to show that Defendant's "asserted reason[s] w[ere] merely pretext for discrimination." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014). Pretext may be shown if there is evidence showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1047 (8th Cir. 2011) (cleaned up). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.*

Defendant claims the evidence shows that Plaintiff was counseled many times regarding his interactions with co-workers and patients. For instance, Defendant references the incident with Credle in which she became emotional due to her conversation with Plaintiff and later admitted that she did not feel comfortable speaking with him. Critically, Dr. Skalitzky was the individual who found Credle and spoke with her about the incident. The incident with Credle was alleged to have occurred in June 2015. Just two months later, an evaluation of Plaintiff was

8

produced and signed off by Dr. Skalitzky. In that evaluation, not only was Plaintiff given satisfactory scores, but the reviewers also noted that he "does well" despite not having a complete PACT 9 team to support him. (Doc. #137-3, p. 2.) This is of note because there was no mention of a need for Plaintiff to address his interpersonal relationships with staff members in the evaluation.

When the decision was ultimately made to institute the Initial FPPE, the timing is also important. During the time frame between August and September 2015, after the positive evaluation had been signed by Dr. Skalitzky, Plaintiff offered complaints about racist comments made by Schutjer. Once these complaints were levied, the posture toward Plaintiff changed. The evidence did not show that Dr. Skalitzky thoroughly investigated the complaints made by Plaintiff. Additionally, after the complaints of racism, Dr. Skalitzky then recommended the start of an FPPE for cause due to the Credle incident which had previously not been worth addressing on Plaintiff's evaluation report from July 2015. This evidence suggests that but-for Plaintiff's complaints against Dr. Skalitzky and Schutjer's race-related comments, Plaintiff would not have been put on performance reviews that in turn resulted in the denial of Plaintiff's performance pay and ultimate termination.

Defendant also advances the argument that Plaintiff's firing was not pretext because he was subject to multiple complaints from patients. However, the record demonstrates that Plaintiff received multiple Employee of the Month nominations. These nominations speak to Plaintiff's positive patient interactions. Defendants note that that Plaintiff had "more patient complaints about his behavior than any other primary care provider[.]" (Doc. #139, p. 3.) The nature of these complaints is in question considering that a patient advocate report from October 2016 contained a complaint from a patient that "Dr. Skalitzky had contacted them soliciting them to file a complaint against Dr. Reddiar." (Doc. #137-30, p. 1.) Plaintiff provided evidence

9

demonstrating that the number of complaints against him may have been influenced by Dr. Skalitzky's solicitation efforts.

This October 2016 report was just a month after Plaintiff had complained to his union president that Dr. Skalitzky had prohibited Plaintiff from talking with patients who allegedly complained about him while he was purportedly on an FPPE arising out of his difficulties with patient communications. Further, Plaintiff was put at a further disadvantage because though he was supposed to improve patient communications and address complaints, Dr. Skalitzky would not give Plaintiff the complaint list unless he agreed not to communicate with those patients. Additionally, five patients nominated Plaintiff for the Excellent Customer Service Award in 2017 and 2018 while the second FPPE was in progress. Considering these facts, Plaintiff was successful in meeting the *McDonnell-Douglas* burden and judgment as a matter of law is not warranted pursuant to Rule 50(b).

### B. New Trial

#### 1. Jury Instruction No. 15 Was Proper

To support its motion for a new trial, Defendant argues the jury was errantly instructed to consider the FPPEs in conjunction with considering whether retaliation occurred. Plaintiff disagrees.

"The district court's jury instructions are reviewed for abuse of discretion, and the issue is whether the instruction fairly and adequately submitted the issue to the jury." *Yancey v. Weyerhaeuser Co.*, 277 F.3d 1021, 1025–26 (8th Cir. 2002). "[N]egative employment review is actionable only if it is later used as basis to alter in detrimental way terms or conditions of recipient's employment." *Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005).

Instruction No. 15 reads, in relevant part:

> Your verdict must be for Plaintiff Venugopal Reddiar and against defendant Denis McDonough on the plaintiff's claim of retaliation if all the following elements have been proved:
>
>> *First*, the plaintiff complained to the defendant that he was being harassed; and *Second*, the defendant placed plaintiff on a Focused Professional Practice Evaluation ("FPPE") and terminated plaintiff's employment; *Third*, the placing of plaintiff on an FPPE and terminating of plaintiff's employment might well dissuade a reasonable worker in the same or similar circumstances from making a charge of discrimination . . .

(Doc. #126, p. 17).

Here, the Defendant's argument is unpersuasive. While the stated objective of the FPPE is to be instructive rather than punitive, the evidence supported a finding that it was utilized in an inappropriate manner. This is true for a series of reasons. The trigger for the Initial FPPE was based on a circumstance which was originally ignored before Plaintiff had complained about racist comments levied at him. The stated reason for the second FPPE was based on the alleged communication issues that Plaintiff displayed. However, this was even though Plaintiff successfully completed an FPPE related to difficulties with communications 104 days earlier.

Additionally, Dr. Reddiar's ability to mend communication issues, the main reason for the FPPE, was hampered by the KCVA because he was not permitted to communicate with the patients who alleged communication issues. Further, the evidence supports that Plaintiff was not given the opportunity to show improvement with his communication skills for almost eight months due to being placed in a role in which he was not permitted to work with patients. The punitive nature of the second FPPE was also made clear because it continued despite there being no triggers during July to December 2017 review cycle. While the Eighth Circuit has made clear that placement on a performance improvement plan, without more, is not an adverse action, Defendant in this case used the FPPE to retaliate against Plaintiff for protective activity. *See Fiero v. CSG Systems, Inc.*, 759 F.3d 874, 880 n.2 (8th Cir. 2014).

11

## 2. Testimony Elicited at Trial Was Proper

Defendant also argues that Plaintiff was improperly permitted to elicit testimony about FPPEs from witnesses who had no foundation to testify about the FPPE process. Plaintiff disagrees and claims proper foundation was laid.

"The Federal Rules of Evidence generally require witnesses to testify based on personal knowledge." *United States v. Overton*, 971 F.3d 756, 762 (8th Cir. 2020). "A lay witness may offer opinion testimony if it is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Id.* (internal quotations omitted). "Under Rule 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." *United States v. Schave*, 55 F.4th 671 (8th Cir. 2022) (internal quotations omitted).

Here, the Defendant's argument is unpersuasive. At trial, testimony was given about the purported negative working conditions at KCVA, staff discontent, and staffing issues. This evidence was relevant in context because Plaintiff was disciplined for speaking up about those issues and that discipline was retaliatory in nature. Importantly, this retaliation stemmed from protected activity which took place prior. The KCVA's policy is to promote a welcoming environment for its employees. Through the evidence presented, Plaintiff demonstrated that the use of the FPPEs and other various disciplinary acts were done to retaliate against Plaintiff.

Additionally, for the testimony elicited at trial, a proper foundation was laid for each witness. Plaintiff was able to establish that the witnesses were testifying about matters of which they had personal knowledge. This Court heard the objections based on a lack of foundation and ruled on them as they arose. Not only was a proper foundation laid for all witnesses, but the witnesses were also subjected to effective cross examination for the jury's consideration. As a

result, Defendant has not met its burden in attempting to move for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A).

## IV. Conclusion

For the aforementioned reasons is Defendant's Motion for Judgment as A Matter of Law And Alternatively, Motion For New Trial (Doc. #136) is DENIED.

**IT IS SO ORDERED**.

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

**DATE**: January 5, 2023